Filed 3/14/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARK FUDGE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CITY OF LAGUNA BEACH et al.,<br><br>    Defendants and Respondents,<br><br>HANY DIMITRY,<br><br>    Real Party in Interest and Respondent. | G055711<br><br>(Super. Ct. No. 30-2017-00930564)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

The opinion filed February 13, 2019, is hereby modified in the following particulars:

1. On the first page of the opinion, counsel for plaintiff and appellant should now read:  "Morrison & Foerster; King & Spalding, Peter Hsiao and Matthew L. Hofer for Plaintiff and Appellant."

2. On page 4 of the slip opinion, in the first paragraph, delete the words "a neighbor" in the fourth sentence.

3.  On page 6 of the slip opinion, in footnote 7, third paragraph, delete the parenthetical "(such as Fudge's neighbor here)."

4.  On page 13 of the slip opinion, delete footnote 13.

These modifications do not affect the judgment.

The petition for rehearing filed February 28, 2019, is DENIED.


BEDSWORTH, ACTING P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARK FUDGE, | |
|    Plaintiff and Appellant, | G055711 |
|       v. | (Super. Ct. No. 30-2017-00930564) |
| CITY OF LAGUNA BEACH et al., | O P I N I O N |
|    Defendants and Respondents; | |
| HANY DIMITRY, | |
|    Real Party in Interest and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Glenda Sanders, Judge. Affirmed.

Morrison & Foerster; King & Spalding, Peter Hsaio and Matthew L. Hofer for Plaintiff and Appellant.

Rutan & Tucker, M. Katherine Jenson and Philip D. Kohn for Defendants and Respondents.

Nossaman, John J. Flynn, III, Steven H. Kaufmann and David J. Miller for Real Party in Interest and Respondent.

## I. INTRODUCTION

We venture once again into the brambled thicket of the California Environmental Quality Act – an area of the law largely governed by the unfortunate fact that complicated problems often require complicated solutions. This case is rendered more recondite by the involvement of the California Coastal Commission's rules and procedures, effectively overlaying the enigmatic with the abstruse.

We resist the temptation to declare the dispute moot and walk away because this issue involves our environment and people's homes, and involves questions likely to re-occur. Environmental issues require light – either ours or someone else's – so we publish the opinion.

Hany Dimitry obtained from the City of Laguna Beach (the City) a coastal development permit (CDP) to demolish his Laguna Beach house. Mark Fudge challenged the permit in two fora: He appealed to the California Coastal Commission (the Commission) *and* he filed this action in state court attacking the merits of the City's decision to grant Dimitry a CDP. Then the Commission accepted Fudge's appeal, which meant it would hear that appeal "de novo." (See Pub. Resources Code, § 30621, subd. (a).[1]) Because the Commission's hearing would be "de novo," the trial court followed *Kaczorowski v. Mendocino County Bd. of Supervisors* (2001) 88 Cal.App.4th 564 (*Kaczorowski*) and *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253 (*McAllister*) in concluding that there was no relief that Fudge might be able to obtain in his court action. The trial court concluded Fudge's challenge to Dimitry's CDP was now *entirely* in the hands of the Commission.

The court therefore dismissed the civil action. Fudge appeals, arguing the Commission's hearing was not going to be truly "de novo" because the Commission would use different rules and procedures than the City used. His prooftext is a statement

---

[1] All further statutory references are to the Public Resources Code.

made by our Supreme Court back in 1937 that a de novo hearing "contemplates an entire trial of the controversial matter *in the same manner* in which the same was originally heard." (*Collier & Wallis, Ltd. v. Astor* (1937) 9 Cal.2d 202, 205 (*Collier*), italics added.) An appeal of a CDP to the Commission, says Fudge, would not be heard "in the same manner" as a city's original granting of that CDP. Specifically, he notes, while the City was required to make its decision under the California Environmental Quality Act (CEQA), the Commission would be deciding his appeal under the California Coastal Act (the Coastal Act). Thus, he reasons, there must still be something left of the City's decision for him to attack in civil court – specifically the alleged deficiencies under CEQA inherent in that decision.

But, as we discuss below, when it comes to a local coastal entity's decision on a CDP, the Legislature has constructed a system in which appeals to the Commission would be heard de novo under the Coastal Act even though the original local decision was decided under CEQA. The reason, in brief, is found in section 21080.5, which is part of CEQA itself. That statute says that when the state Secretary of Resources certifies the regulatory program of a state agency requiring submission of environmental information, the submission of such information may be submitted "in lieu of" the usual environmental impact report (EIR) that might otherwise be required under CEQA. Fudge's mistake lies in his belief the Legislature was bound by the *Collier* court's observation about de novo hearings being conducted in "the same manner" as the original.[2] We must disagree. It's the other way around. The Legislature was not bound by our Supreme Court's observation about the common law nature of "de novo" hearings. Rather the courts are bound by the intent of the Legislature as to what the hearings would look like – plainly expressed in section 21080.5. We therefore affirm.

---

[2]     We note that Fudge's voluminous briefing never actually comes to grips with the "in lieu of" language in section 21080.5 – those statutory words don't appear in his opening or reply briefs. It's a rather impressive mistake, demonstrating excellent research and considerable mental acuity, but a mistake, nonetheless.

## II. BACKGROUND

In April 2016, Hany Dimitry bought a house in Laguna Beach located between Pacific Coast Highway and the ocean. The house was built in 1930. Dimitry wanted to demolish it and replace it with a new, three-story, single family residence. Appellant Mark Fudge, a neighbor, opposed Dimitry's project, and contended, among other things, that the house had historical value as a "relatively unaltered" example of Spanish Colonial Revival Design. Dimitry's proposed new house allegedly would also obstruct "view corridors."

In January 2017, the City's design review board concluded the house's historic importance should at least be studied and denied the application for demolition and replacement. A few months later, the city council overturned the design review board's decision and approved a CDP for the demolition of the house.[3] The council did not take action on the proposed new house.

In June 2017, Fudge and a neighbor filed an appeal of the CDP to the California Coastal Commission. The next month, he filed this case in superior court petitioning for a writ of mandate to vacate the City's issuance of the CDP. In August 2017, the Coastal Commission accepted Fudge's appeal, finding the City's issuance of the CDP raised a substantial issue concerning the CDP's compliance with both the state Coastal Act and the City's own local coastal program (or "LCP").[4] Accepting the appeal

---

[3] One city council member noted that the house was apparently so rickety that it is"not livable."

[4] Some appeals are a matter of right; some aren't. (See Rylaarsdam, *The Crisis of Volume in California's Appellate Courts: A Reaction to Justice in the Balance 2020 and a Proposal to Reduce the Number of Nonmeritorious Appeals* (1998) 32 Loy. L.A. L. Rev. 63, 99 [advocating increased discretionary appellate review to alleviate court congestion].) Most of the time, appeals to the California Court of Appeal are matters of right. But it's a bit different when it comes to appeals to the Coastal Commission involving a CDP issued by a local coastal entity such as the City here. There is no appeal as a matter of right, but by statute the odds favor the Commission "accepting" the appeal. Section 30625, subdivision (b)(1) makes acceptance of an appeal the default result by requiring the Commission to find the *absence* of a "substantial issue" before it can deny an appeal. ("(b) The commission shall hear an appeal unless it determines the following: [¶] (1) With respect to appeals pursuant to subdivision (a) of Section 30602, that no substantial issue exists as to conformity with Chapter 3 (commencing with Section 30200).")

4

meant that the Coastal Commission would conduct a "de novo" hearing on the validity of the permit. (See § 30621, subd. (a)[5].)

While the Coastal Commission's de novo review hearing was pending, both Dimitry and the City demurred to Fudge's petition in Superior Court on the ground the acceptance of the appeal to the Coastal Commission mooted any possibility Fudge might be able to obtain relief against the City in civil court.

The trial court, as it was required to do under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, followed the only two appellate court decisions on point, *Kaczorowski* and *McAllister*. Both cases squarely hold that when the Coastal Commission accepts an appeal from the issuance of a CDP, it is the Coastal Commission that decides whether that CDP complies with all the relevant legal standards. (See *Kaczorowski, supra*, 88 Cal.App.4th at p. 569; *McAllister, supra*, 147 Cal.App.4th at p. 296.) Only after the Coastal Commission issues its decision can parties attack *the Commission's* decision in court by writ of mandate. (§ 30801; *McAllister, supra*, 147 Cal.App.4th at p. 288.)

We have no rule of horizontal stare decisis in California (see, e.g., *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193), so we aren't bound by those decisions. Now that the case is in this court, Fudge takes dead aim at *Kaczorowski* and *McAllister*, asserting they were wrongly decided.

Meanwhile, during the pendency of this appeal, the Commission approved Dimitry's request to demolish his house, the City issued the relevant permits to allow the demolition, and the house was, in fact, demolished.[6] While Dimitry and the City invite

---

5    Section 30621, subdivision (a) provides in part: "The commission *shall provide for a de novo public hearing on applications for coastal development permits* and any appeals brought pursuant to this division and shall give to any affected person a written public notice of the nature of the proceeding and of the time and place of the public hearing." (Italics added.)

6    We grant the various requests of the City and Dimitry filed on October 4, 2018, to take judicial notice of the Commission's decision and of the City to take judicial notice of the permits it issued allowing the actual demolition.

5

us to dismiss Fudge's appeal as itself moot in light of the fait accompli of the demolition, we conclude Fudge's appeal presents a classic example of a question of public interest that is "capable of repetition, yet evading review." (*Ogunsalu v. Superior Court* (2017) 12 Cal.App.5th 107, 111; *People v. Alsafar* (2017) 8 Cal.App.5th 880, 886.[7]) We are not unaware of the irony that we are invoking a well-established exception to mootness on appeal to explain why the trial court was correct in finding a different kind of mootness at the trial level.

## III. DISCUSSION

The two major pieces of land use legislation bearing on this appeal are CEQA, enacted in 1972 (see *Meridian Ocean Systems, Inc. v. State Lands Com.* (1990) 222 Cal.App.3d 153, 159 (*Meridian*)) and the Coastal Act enacted in 1976 (see *Greenfield v. Mandalay Shores Community Assn.* (2018) 21 Cal.App.5th 896, 900.) CEQA occupies the 21000 sections of the Public Resources Code, while the Coastal Act is found in the 30000's. A brief comparison of the two is in order.

CEQA lays down three levels of environmental analysis for property development in California. (1) Is the development exempt from environmental review because it categorically will have no significant impact on the environment? (2) If not categorically exempt, is there a reasonable possibility the development will have a significant environmental impact? If there is no such possibility, the development is entitled to a "negative declaration" and the environmental review ends there. But if there

---

[7]     To illustrate why the evasion of review exception seems warranted here, we posit the problem faced by a litigant in Fudge's position – an objector to a CDP issued by a local coastal entity – who *only* wanted to attack the local entity's decision *without* appealing to the Commission. Would that be possible? We think not.

        For one thing, section 30625, which provides for appeals to the Commission from grants of permits, at the very least affords such a litigant an *administrative* remedy against that CDP, and we can see no reason the general doctrine of exhaustion of administrative remedies should not apply in such a situation. Ironically, the case that is clearest on the need for exhaustion by a litigant in Fudge's position (and thus supports Fudge's claim to an evade-review exception to mootness) is one that Fudge elsewhere attacks as wrongly decided, *McAllister*. (See *McAllister, supra*, 147 Cal.App.4th at pp. 283-284 [claim that county's decision on CDP was null and void still did not excuse need to exhaust remedy of appealing to the Commission].)

        For another, by its terms section 30625 allows third parties (such as Fudge's neighbor here) to appeal grants of CDP's to the Commission, which means it may be impossible for a litigant like Fudge to confine a challenge in civil court to what the local coastal entity did, even if he wants to.

6

is such a possibility, (3) an EIR must be prepared. (See *Meridian, supra,* 222 Cal.App.3d at pp. 159-160.) The EIR must inform the relevant local decision makers of all the negative impacts posed by the development. (See *Vedanta Society of So. California v. California Quartet, Ltd.* (2000) 84 Cal.App.4th 517, 530.) It is a leitmotif of the cases that the EIR is the "heart" of CEQA.

Like CEQA, the Coastal Act seeks to protect the environment of the state's coastline *qua* environment. The very first enumerated goal of the Coastal Act is to "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources." (§ 30001.5, subd. (a).) But the Coastal Act has an additional goal, not shared by CEQA. The Coastal Act seeks to "[m]aximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners." (*Id*., subd. (c).)

This is where the Commission comes in. "The Coastal Act created the Coastal Commission as the entity with the primary responsibility for the implementation of the provisions of the Coastal Act (§ 30330) . . . ." (*Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 20.) To paraphrase *County of Inyo v. Yorty* (1973) 32 Cal.App.3d 795, 810, just as the EIR is in many respects the heart of CEQA, the Coastal Commission is in many respects the heart of the Coastal Act.[8]

As in ordinary land use law, the Coastal Act sets up a permit system. Under the Coastal Act, any development in the coastal zone requires a CDP in addition to any other permits that might be required. (§ 30600.) But in regard to CDP's, there is an initial delegation of labor. The Coastal Act implements a structure whereby local coastal

---

[8]     To quote section 30330: "The commission, unless specifically otherwise provided, shall have the *primary responsibility for the implementation of the provisions of this division* and is designated as the state coastal zone planning and management agency for any and all purposes, and may exercise any and all powers set forth in the Federal Coastal Zone Management Act of 1972 (16 U.S.C. 1451, et seq.) or any amendment thereto or any other federal act heretofore or hereafter enacted that relates to the planning or management of the coastal zone." (Italics added.)

governmental entities (such as Laguna Beach) are tasked with developing their own local coastal programs, known as LCP's. Local agencies' LCP's must implement the Coastal Act's objectives of protecting the coastline and its resources, plus maximizing public access to that coastline. (See *Schneider v. California Coastal Com.* (2006) 140 Cal.App.4th 1339, 1344.) Moreover, a coastal government's LCP must be prepared in "full consultation" with the Coastal Commission (§ 30500, subd. (c)), though the precise content of that LCP is to be determined by the entity.

In turn, the entity submits its LCP to the Coastal Commission (§ 30513), which then decides whether to certify it (§ 30512). Once the LCP is certified, it is the local government that has the responsibility over development within its part of the coastal zone, except – and this is an important exception – for appeals to the Coastal Commission. Section 30519 provides in pertinent part: "*Except for appeals to the commission*, as provided in Section 30603, after a local coastal program, or any portion thereof, has been certified and all implementing actions within the area affected have become effective, the development review authority provided for in Chapter 7 (commencing with Section 30600) shall no longer be exercised by the commission over any new development proposed within the area to which the certified local coastal program, or any portion thereof, applies and shall at that time be delegated to the local government that is implementing the local coastal program or any portion thereof." (Italics added.)

Any aggrieved person can appeal a decision on a CDP to the Commission. (§ 30625.) As noted above, the Commission's acceptance of the appeal is likely because the commission must find a negative – an absence of a "substantial issue" of compliance with the Coastal Act of the local entity's own LCP – in order *not* to hear the appeal. Also as noted, the Commission hears the appeal "de novo." (§ 30621, subd. (a).)

This, to use the metaphor one last time, is at the heart of the case before us. Fudge's attack on *Kaczorowski* and *McAllister* is complex. The argument begins with a

8

common law definition of the words "de novo," taken from *Collier*. *Collier* was a movie industry case. The issue in *Collier* was whether 1913 private employment agency legislation *unconstitutionally* provided for the superior court to exercise appellate jurisdiction over Labor Commission decisions when appeals are supposed to be reserved to the Court of Appeal. The high court held the 1913 legislation wasn't unconstitutional because it provided that the "matter" decided by the Labor Commissioner would be considered "de novo" by the superior court. In the process, the Supreme Court observed: "A hearing de novo literally means a new hearing, or a hearing the second time. (18 Cor. Jur. 486.) Such a hearing contemplates an entire trial of the controversial matter in the same manner in which the same was originally heard. It is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held." (*Collier, supra*, 9 Cal.2d at pp. 204-205.)

Relying on the "in the same manner" statement from *Collier*, Fudge focuses on the different rules and procedures a city might use in issuing a CDP under CEQA and the rules and procedures the Commission might use in considering a "de novo" appeal. Fudge's argument is best encapsulated in this passage from page 27 of his opening brief: "The Coastal Commission's hearing of an appeal from a local agency decision cannot satisfy *Collier's* requirements for a de novo hearing because the Commission does not hear 'the controversial matter in the same manner in which the same was originally heard.'" (Quoting *Collier, supra*, 9 Cal.2d at p. 205.)

Fudge embellishes that argument by noting there is no exact fit between CEQA as used in local agency hearings on CDP's and Commission appeals.[9]   These differences, according to Fudge, yield the conclusion that if the Coastal Commission

---

[9]    To demonstrate the absence of such a fit, Fudge notes: (1) local agencies consider other kinds of land use entitlements than CDP's (such as zoning variances) and may, for example, have different kinds of criteria bearing on historical preservation than employed by the Coastal Commission; (2) local agencies use different procedures for considering decisions on things like permits; and (3) local agencies are bound by the classic three-step CEQA process while the Coastal Commission is not.

accepts an appeal, that acceptance does not mean the local agency's decision will be a nullity; it will still be subject to attack even after the Commission reaches a decision. Fudge's punch line sentence is: "And if the *Collier* test for a de novo hearing is not satisfied, then the Coastal Commission decision on appeal does not nullify the hearing of the lower agency as if it never happened."

But in relying on *Collier's* "same manner" statement, Fudge ignores a later formulation of the term "de novo hearing" in which the Supreme Court conspicuously omitted any "same manner" requirement. That case was *Buchwald v. Katz* (1972) 8 Cal.3d 493. There, the Supreme Court revisited a later incarnation of the same statute considered in *Collier*, one which also used the words "de novo." That statute, like section 30621 here, did not contain the words "same manner," and in quoting what *Collier* had said about hearing matters "de novo," the high court omitted the "same manner" statement. The ellipses in the following quote from *Buchwald* are all in the original. Like dogs that do not bark, what is not there is as important as what is: "In *Collier & Wallis, Ltd. v. Astor* (1937) 9 Cal.2d 202, 205, construing section 19 of the predecessor statute, we held that all controversies arising under the Private Employment Agencies Law must first be submitted to the Labor Commissioner. Analyzing in detail the nature of an appeal from a determination of the Labor Commissioner, conferred by the 1923 amendment, we there said: 'A hearing *de novo* literally means a new hearing, or a hearing the second time. . . . It is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held. . . . A hearing *de novo* therefore is nothing more nor less than a trial of the controverted matter by the court in which it is held. . . . It is in this sense that the language of section 19 . . . was intended to be understood.'" (*Buchwald v. Katz, supra,* 8Cal.3d at p. 501.)

The Legislature passed the Coastal Act four years after *Buchwald*. Since section 30621 uses the words "de novo" but does not use the "in the same manner"

10

language as its predecessor, former section 27423, it seems to us to follow that when the Commission accepts an appeal, that acceptance does, indeed, nullify the lower entity's decision. Nor did the Legislature have any objection to the Commission using a different set of rules and procedures in such a de novo appeal. Section 21080.5, which is part of CEQA itself, makes that unmistakable.

Section 21080.5 allows the state Secretary of Resources to certify the regulatory program of a state agency requiring submission of environmental information. When the program is so certified – and this is important language – that submission of environmental information may be submitted "in lieu of" an EIR.[10] Certification of the Coastal Commission's regulatory program happened back in 1979. "In 1979, the Secretary of Resources, pursuant to section 21080.5, certified that Commission *review of original LCP submittals was the functional equivalent of CEQA review* and, consequently, no separate EIR need be prepared." (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 551-552, italics added.)

The use of one set of laws (CEQA) at one level and another set at the next level (the Coastal Act) might seem anomalous. That's usually not the way hierarchies of review work. And in that regard, Fudge stresses the distinction between "lead agencies" and "responsible agencies" under CEQA. Lead agencies are those government entities that have "the principal responsibility for carrying out or approving a project which may have a significant effect upon the environment" (§ 21067) while responsible agencies are those bodies "other than the lead agency" which have "responsibility for carrying out or approving a project." (§ 21069.) For Fudge, the model proffered in *Kaczorowski* and

---

[10] Subdivision (a) of section 21080.5 provides: "Except as provided in Section 21158.1, when the regulatory program of a state agency requires a plan or other written documentation containing environmental information and complying with paragraph (3) of subdivision (d) to be submitted in support of an activity listed in subdivision (b), *the plan or other written documentation may be submitted in lieu of the environmental impact report required by this division* if the Secretary of the Resources Agency has certified the regulatory program pursuant to this section." (Italics added.)

11

*McAllister* is at odds with that fundamental demarcation within CEQA, particularly when one realizes that lead agencies – the City here – cannot delegate their environmental review duties to another body. (See *Friends of Eel River v. North Coast Rail Authority* (2017) 3 Cal.5th 677, 712-713.) For Fudge, it just makes no sense that a "responsible" agency – which he assumes is the Commission in this analogy – has de facto first review authority instead of the "lead" agency, i.e., the City.

The simple answer is that the Legislature didn't write the law the way Fudge now thinks it ought to have done. The Legislature provided for de novo review of appeals to the Commission, period. And it impliedly emphasized the importance of the Commission's de novo review in section 21174, which says the Coastal Act takes precedence over CEQA.[11]

Moreover, the Legislature's choice was certainly rational. The alternative would be to allow project opponents to attack the original decision by a local government issuing a CDP in civil court and simultaneously attack the same decision in Commission proceedings. It would not only give project opponents an inexplicable two bites at the apple but also undermine the ability of the Commission to implement uniform policies governing coastal development.

The trial court was thus correct in finding that Fudge's civil case was moot. *Kaczorowski* and *McAllister* were correctly decided. We express no opinion on the

---

[11] "No provision of this division is a limitation or restriction on the power or authority of any public agency in the enforcement or administration of any provision of law which it is specifically permitted or required to enforce or administer, including, but not limited to, the powers and authority granted to the California Coastal Commission pursuant to Division 20 (commencing with Section 30000). *To the extent of any inconsistency or conflict between the provisions of the California Coastal Act of 1976* (Division 20 (commencing with Section 30000)) and the provisions of this division, *the provisions of Division 20 (commencing with Section 30000) shall control.*" (Italics added.)

Fudge attempts to circumvent section 21174 by saying nothing in the Coastal Act requires the Coastal Commission to review or supersede the local agency's CEQA determinations," but by now readers should know that sections 30621 and 30625 do precisely that.

merits of any section 30801 writ[12] that Fudge may bring (or already has brought) against the Coastal Commission's decision to give Dimitry the CDP to demolish his house.[13]

One last matter must be dealt with: Attorney fees. In yet another irony, Fudge sought his attorney fees in the trial court even though he lost. The trial court unsurprisingly denied the request. Fudge's theory derived from the idea that if his appeal to the Commission had indeed nullified the City's grant of the CDP, he had won. This is an argument of impressive agility, but little convincing force. The very fact Fudge is sufficiently aggrieved by the trial court's dismissal of the case to bring this appeal (see Code Civ. Proc., § 902) militates against characterizing the result below as a victory. The court correctly denied attorney fees.

## IV. DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.

---

[12] This is a failsafe mechanism: Project opponents who feel aggrieved by the Commission's decision still have the right to file for writs of mandate to vacate *that* decision. (§ 30801.)

[13] We take judicial notice of the fact the Commission has approved a proposed new house on Dimitry's property and of Fudge's filing a new civil action in superior court against that decision, but these are relevant only to illustrate the point that Fudge is exercising his right under section 30801 to challenge a Commission decision in superior court.

13