Filed 11/22/24  Midler v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ANDREW MIDLER et al., | D082495 |
| Plaintiffs and Appellants, | (Super. Ct. No. 37-2019-00067083-CU-TT-CTL) |
| v. | |
| CITY OF SAN DIEGO, | |
| Defendant and Respondent; | |
| ROGER B. ABBOTT, as Co-trustee, etc. et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Hecht Solberg Robinson Goldberg & Bagley, Talon J. Powers, and Sabrina D. Johnson for Plaintiffs and Appellants.

Mara W. Elliott, City Attorney and Jana Mickova Will, Deputy City Attorney, for Defendant and Respondent City of San Diego.

Aannestad Andelin & Corn, Arie L. Spangler and Lee M. Andelin for Real Parties in Interest and Respondents Roger B. Abbott and Rosalind M. Abbott.

Andrew Midler, Monica Midler, and Moses Property, LLC (collectively the Midlers) appeal the judgment dismissing their petition for a writ of mandate to remedy an alleged violation of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) by the City of San Diego (City) in its issuance of a negative declaration for a home remodeling project proposed by Robert B. Abbott and Rosalind M. Abbott (collectively the Abbotts). The superior court ruled a decision by the California Coastal Commission (Coastal Commission) to issue a coastal development permit (CDP) after conducting a de novo environmental review of the project while the writ proceeding was pending mooted the proceeding and the Midlers could not amend the petition to state a valid claim. The Midlers contend the proceeding is not moot because the City also issued a site development permit (SDP) for the project, which the Coastal Commission did not consider. They also contend the superior court should have allowed them to amend their writ petition to add allegations of subsequent administrative actions they say would allow them to avoid any mootness.

We reject the Midlers' contentions. As we shall explain, CEQA requires consideration of potential environmental effects of a project as a whole, not those associated with any particular permit required for the project. In its de novo review of the Abbotts' CDP application, the Coastal Commission conducted its own environmental review of the Abbotts' home remodeling project and determined that, as modified and conditionally approved, the project complied with CEQA. Because the Commission's staff report is

2

functionally equivalent to the environmental impact report (EIR) the Midlers sought to compel the City to prepare under CEQA, their writ proceeding is moot. Moreover, because the Commission made the final administrative CEQA determination for the project and the Midlers did not timely challenge that decision in the superior court, they may not now amend their petition to state a valid CEQA claim. We therefore affirm the judgment of dismissal.

## I.

## BACKGROUND

A.   *City's Approval of the Abbotts' Remodeling Project*

The Midlers and the Abbots live in neighboring homes atop a bluff overlooking the Pacific Ocean in La Jolla. In 2017, the Abbotts applied to the City for a CDP and an SDP to remodel their single-family home by expanding the ground level, adding a second story, and enlarging two detached garages. The remodeling project required a CDP because the Abbotts' home is located in the City's coastal overlay zone (San Diego Mun. Code, § 126.0702, subd. (a)), and an SDP because the home is located on environmentally sensitive lands, which include sensitive coastal bluffs (*id.*, § 126.0502, subd. (a)(1)(A)). From September 2017 through August 2018, the Midlers sent multiple letters to the City stating concerns about bluff stability and compliance with ordinances regarding setbacks, fences, retaining walls, views, and removal of a tree.

The City consolidated the Abbotts' permit applications (San Diego Mun. Code, § 126.0707, subd. (e)), reviewed their home remodeling project under CEQA and, on November 30, 2018, issued for public consideration a draft report finding the project would not have a significant impact on the environment and recommending issuance of a negative declaration. The Midlers sent the City a letter objecting to issuance of a negative declaration

3

in which they claimed preparation of an EIR was required because the Abbotts' proposed remodeling project would have significant environmental effects. The Midlers relied on "critical commentary" from a geotechnical engineer about the effect the project would have on bluff stability, and complained the City had failed to address bluff stability, the role of the Abbotts' seawall, their removal of a tree, and view requirements. At a hearing on August 7, 2019, the City's hearing officer, over the Midlers' objections, adopted the negative declaration and granted a CDP and an SDP for the Abbotts' project.

B. *Appeal to City Council*

The Midlers appealed the hearing officer's decision to adopt the negative declaration to the City Council. (See San Diego Mun. Code, §§ 112.0520 ["*environmental determination*" is appealable to City Council], 113.0103 ["*environmental determination*" includes decision to adopt negative declaration under CEQA].) They alleged the hearing officer failed to evaluate the geotechnical engineer's report that the Abbotts' remodeling project could harm the environment, the proposed setback was unsupported by previously conforming uses in light of potential environmental harm, and the findings on the seawall were erroneous because the hearing officer failed to consider climate change and rising sea levels. The City Council held a public hearing, found there was no substantial evidence the project would have a significant effect on the environment, and voted unanimously to deny the Midlers' appeal on November 18, 2019.

C. *Commencement of Superior Court Proceedings*

The Midlers filed a petition for writ of mandate in the superior court on December 17, 2019, naming the City as respondent/defendant and the Abbotts as real parties in interest. Significantly for this appeal, they

4

asserted a single cause of action that the adoption of the negative declaration violated CEQA. The Midlers alleged they had presented substantial evidence to support a fair argument the Abbotts' remodeling project might have a significant effect on the environment, including: (1) a geotechnical engineer's opinion the project "risked the overall stability of the sensitive coastal bluff" on which the Abbotts' home is situated; (2) "[e]vidence that the [p]roject fails to address soil strength, safety, subsidence, managed retreat, and the nature (as a 'bluff protection device') and role of the seawall"; (3) "[e]vidence that the City failed to address, through mitigation or otherwise, the Abbotts' removal of a mature palm tree and other vegetation from a sensitive coastal bluff"; and (4) "[e]vidence that the City erred in justifying its standard of environmental review by relying on the setbacks established in the [m]unicipal [c]ode, while approving a [n]egative [d]eclaration of the [p]roject which reduced setbacks from the sensitive coastal bluff." The Midlers alleged that in approving the negative declaration the City "prejudicially abused its discretion under CEQA by failing to proceed in the manner required by law, by coming to a decision not supported by the findings, and by relying on findings not supported by the evidence." They prayed for a writ commanding the City to void the decision approving the negative declaration and to suspend all activity that could result in any change to the environment until it completed the environmental review necessary to comply with CEQA.

The Midlers did not challenge the City's decision to issue the CDP and the SDP in their writ petition. They alleged their appeal of that decision was still pending before the City's planning commission, and they would request leave to amend the petition once the administrative appeal concluded and the commission made its final decision regarding the permits. The Midlers never amended the petition to attack the issuance of either permit.

5

D.  *Appeal to City's Planning Commission*

The Midlers appealed the hearing officer's decision to grant the Abbotts a CDP and an SDP to the City's planning commission.  (See San Diego Mun. Code, §§ 126.0504, subd. (a), 126.0707, subd. (b) [decision to issue CDP or SDP is appealable to planning commission].)  In that appeal, they alleged: (1) the Abbotts' removal of a tree constituted " 'coastal development' " and a violation of the municipal code for which the hearing officer erred by failing to require remediation; (2) the approval of a setback of 25 feet from the bluff and the seawall did not account for potential environmental harms identified by the geotechnical engineer; and (3) the permits did not adequately ensure preservation of views.  The planning commission held a hearing on January 23, 2020, denied the appeal, and affirmed the hearing officer's decision to grant the CDP and the SDP.

E.  *Appeal to Coastal Commission*

The Midlers appealed the planning commission's decision on the CDP to the Coastal Commission on February 6, 2020.  (See Pub. Resources Code, § 30625, subd. (a) [local governmental entity's decision on CDP may be appealed to Coastal Commission]; San Diego Mun. Code, § 126.0710, subd. (a) [CDP approved by City may be appealed to Coastal Commission].)  They raised two issues:  (1) the Abbotts violated the City's municipal code and the California Coastal Act (Coastal Act; Pub. Resources Code, § 30000 et seq.) by engaging in "coastal development" (removal of a tree and alteration of vegetation near a coastal bluff) before obtaining a CDP; and (2) the Abbotts' remodeling project, as approved by the planning commission, posed special risks to a sensitive coast bluff by allowing construction within 25 feet of the bluff, instead of within 40 feet as is required when there is a shoreline protective device (here, a seawall) on the property.  After a hearing on May

6

14, 2020, the Coastal Commission determined "the approved siting of the redeveloped structure 25 feet from the bluff edge raise[d] a substantial issue with regard to conformity with the LCP [local coastal plan]" and assumed jurisdiction of the appeal.  (See *id.*, § 30625.)

Over the next 28 months, the Abbotts submitted revised plans for their remodeling project; the Midlers submitted letters expressing concerns about grading, drainage, maintenance of the seawall, and setback; and the Coastal Commission continued the hearing on the appeal to allow its staff to consider project alternatives that would allow maintenance of the seawall but require all new construction be at least 40 feet from the edge of the bluff.  Staff reviewed the project de novo and recommended conditional approval of a modified project in a September 14, 2022 report.  One condition required no portion of the residence be located closer than 40 feet to the bluff edge, and another required a landscape plan that prohibited permanent irrigation in the setback area to decrease risks to geologic stability from excess water infiltration.  The staff report stated that as conditioned "the proposed project is the least environmentally damaging feasible alternative and can be found consistent with the requirements of the Coastal Act to conform to CEQA." The Coastal Commission held a hearing on October 12, 2022, and, over the Midlers' objections, approved issuance of a CDP subject to the conditions recommended in the staff report.

F.    *Further Superior Court Proceedings*

Based on the Coastal Commission's environmental review of the Abbotts' home remodeling project and approval of the CDP, the City and the Abbotts argued the Midlers' writ proceeding under CEQA was moot and jointly moved the superior court for judgment on the pleadings.  They also argued leave to amend should be denied because no amendment could cure

7

the mootness. In support of the motion, the City and the Abbotts requested the court take judicial notice of, among other documents, the Coastal Commission's staff report and its notice of intent to issue a CDP for the Abbotts' remodeling project.[1]

The Midlers opposed the motion on the ground their writ proceeding was not moot as to the approval of the SDP by the City's planning commission, which they argued was not superseded by the Coastal Commission's review of the CDP. They also argued they should be granted leave to amend to add allegations about agency actions taken after they filed the petition for writ of mandate. As part of their opposition, the Midlers asked the superior court to take judicial notice of 23 documents related to their various administrative appeals.[2]

The superior court granted the motion for judgment on the pleadings. It ruled: "After filing this suit, [the Midlers] appealed the City's action to the California Coastal Commission and the Commission accepted the appeal.

---

[1] The City and the Abbotts filed in this court a request for judicial notice of the CDP as acknowledged by the Abbotts. We deny the request because consideration of the document is "not 'necessary, helpful, or relevant' to the resolution of the appeal." (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 819.)

[2] The Midlers filed in this court a separate motion requesting judicial notice of the same documents. Although the superior court did not expressly rule on their request, we may assume the court granted the request because it was unopposed and it appears from the court's ruling on the motion for judgment on the pleadings that it considered the documents. (See *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 889; *Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 918–919.) Because the documents are in the record on appeal, we deny the Midlers' motion as unnecessary. (*Physicians Committee for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 182, fn. 2.)

8

Based on the Coast[al] Commission[’s] review, this action is moot. The [c]ourt denie[d] the request for leave to amend. Any new relief would involve future City and/or Coastal Commission review under a separate standard of review.” The court entered a separate judgment in favor of the City and the Abbotts and against the Midlers.

## II.
## DISCUSSION

The Midlers raise two claims of error. They contend the superior court erroneously ruled their writ proceeding was moot after the Coastal Commission decided their appeal concerning the Abbotts’ application for a CDP. The Midlers alternatively contend that even if the Coastal Commission’s decision mooted the CEQA claim as originally pleaded, the court erroneously denied leave to amend because they can add allegations to state a valid claim. As we shall explain, neither claim of error has merit.

A. *Standards of Review*

In reviewing a judgment on the pleadings, we accept as true all properly pleaded material facts and matters subject to judicial notice, and then exercise our independent judgment to decide whether the petition states a cause of action. (*Vichy Springs Resort, Inc. v. City of Ukiah* (2024) 101 Cal.App.5th 46, 53.) “ ‘Issues of justiciability, such as mootness, are generally reviewed de novo.’ ” (*Ibid.*) “Denial of leave to amend after granting a motion for judgment on the pleadings is reviewed for abuse of discretion.” (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448.)

B. *Mootness*

A case becomes moot when by passage of time or change of circumstances a controversy that once existed ceases to do so. (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th

9

389, 405.) " 'The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief.' " (*Ibid.*) The answer to that pivotal question in this case is "no," for two related reasons.

First, the *only* decision the Midlers challenged as a violation of CEQA, namely, the City's issuance of a negative declaration for the Abbotts' remodeling project, was no longer in effect when the City and the Abbotts moved for judgment on the pleadings. When, as in this case, the Coastal Commission accepts an appeal of a local agency's decision to grant a CDP, the Commission's "review is a *substitute* for an environmental impact report. [Citations.] Its review is 'the functional equivalent of the EIR process.' " (*McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 295–296, fn. omitted (*McAllister*).)[3] The Coastal Act requires "a de novo public hearing" on appeals of local agency decisions on CDP applications. (Pub. Resources Code, § 30621, subd. (a).) "[T]he Commission must hold an entirely new hearing evaluating all aspects of the permit application *as if no decision had*

---

[3] Under CEQA, a state agency with a regulatory program that requires preparation of a document that "[i]ncludes a description of the proposed activity with alternatives to the activity, and mitigation measures to minimize any significant adverse effect on the environment of the activity" and that "[i]s available for a reasonable time for review and comment by other public agencies and the general public" (Pub. Resources Code, § 21080.5, subd. (d)(3)) is exempt from EIR preparation if the regulatory program has been certified by the Secretary of Natural Resources (*id.*, subd. (a)). The Commission's regulatory program "dealing with the consideration and granting of [CDP's]" has been certified by the Secretary. (Cal. Code Regs., tit. 14, § 15251, subd. (c).) Because certified regulatory programs "involv[e] essentially the same consideration of environmental issues as is provided by use of EIRs and negative declarations" (*id.*, § 15002, subd. (*l*)), a Commission staff report that contains the statutorily required information "may be submitted in lieu of the environmental impact report" that would otherwise be required by CEQA for a project that may have significant impacts on the environment (Pub. Resources Code, § 21080.5, subd. (a)).

10

*been previously rendered.*" (*Coronado Yacht Club v. California Coastal Com.* (1993) 13 Cal.App.4th 860, 872, italics added.) "The [City's] CEQA decisions thus have been superseded by the Coastal Commission's environmental review." (*McAllister*, at p. 294; see *Fudge v. City of Laguna Beach* (2019) 32 Cal.App.5th 193, 203 (*Fudge*) ["when the Commission accepts an appeal, that acceptance does, indeed, nullify the lower entity's decision"].) By issuing the staff report and holding public hearings on the Abbotts' application for a CDP, the Commission performed the further environmental review the Midlers sought to compel the City to perform through their CEQA writ proceeding. A case is moot where, as here, the plaintiffs have already obtained all the relief demanded in their pleading. (*Schoshinski v. City of Los Angeles* (2017) 9 Cal.App.5th 780, 791 (*Schoshinski*).)

Second, the Midlers cannot obtain relief under CEQA *from the City*. "Once the [Coastal] Commission conducted its de novo examination, there was no longer a decision by the [City] to review." (*Kaczorowski v. Mendocino County Board of Supervisors* (2001) 88 Cal.App.4th 564, 570 (*Kaczorowski*).) The Commission, not the City, made the final determination that the Abbotts' remodeling project, as modified and conditionally approved by the Commission after its de novo review, complied with CEQA. "The Commission's findings that the proposed [project] complied with CEQA superseded equivalent findings by the [City] [citations] in precisely the same manner that the [City's] decision superseded that of the [hearing officer]." (*Ibid.*) Consequently, the Midlers "no longer ha[ve] any CEQA claims against the [City], which is 'no longer [their] adversarial opponent.' " (*McAllister, supra*, 147 Cal.App.4th at p. 294.) Since "Coastal Commission review was the final step in a sequential process of CEQA proceedings," that "step is the only one appropriate for judicial review." (*Id.* at p. 296; see *Fudge, supra*,

11

32 Cal.App.5th at p. 199 ["Only after the Commission issues its decision can parties attack *the Commission's* decision in court by writ of mandate."].) Hence, "the acceptance of the appeal to the Coastal Commission mooted any possibility [the Midlers] might be able to obtain relief *against the City* in civil court." (*Fudge*, at pp. 198, 205, italics added.)

The Midlers concede the Coastal Commission's CEQA determination superseded that of the City as to the Abbotts' application for a CDP. But they contend their writ proceeding is not moot because the Commission did not consider the Abbotts' related SDP application. The City's decision to grant that application, say the Midlers, was subject to a different administrative appeal process and remains subject to challenge by writ petition under CEQA. We disagree.

The Midlers did not challenge the City's decision to issue either the CDP or the SDP in the writ proceeding. When they filed their petition in the superior court on December 17, 2019, the administrative appeals of those decisions were still pending. The City's planning commission did not decide the Midlers' appeal until January 30, 2020, and the Coastal Commission did not decide their appeal until October 12, 2022. As the Midlers acknowledge, they could not have attacked the decision on the CDP or the SDP in the December 17, 2019 writ petition, because "[e]xhaustion of administrative remedies is a jurisdictional prerequisite to maintenance of a CEQA action." (*Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1199.) The *only* decision the Midlers challenged in the petition was the City Council's November 18, 2019 decision to deny the Midlers' appeal of the hearing officer's decision under CEQA to adopt a negative declaration for the Abbotts' remodeling project. The City Council's decision, as we have explained, was mooted by the Coastal Commission's de

12

novo environmental review of the Abbotts' project and determination that, as modified and conditionally approved, the project complied with CEQA.[4]

The fact that the Coastal Commission made its CEQA determination in a review of the Abbotts' CDP application and did not consider the related SDP issued by the City does not save the Midlers' writ proceeding from mootness. The environmental review required by CEQA is *project*-specific, *not permit*-specific. Although a " 'project' " within the meaning of CEQA may involve the issuance of multiple permits by different governmental entities (Pub. Resources Code, § 21065, subd. (c); Cal. Code Regs., tit. 14, § 15378, subds. (a)(3), (c)), " '[p]roject' means the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment" (Cal. Code Regs., tit. 14, § 15378, subd. (a)). "The term 'project" does not mean each separate governmental approval." (*Id.*, subd. (c).) It "refers to the

_____

[4] This case is distinguishable from *Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, on which the Midlers rely as support for their argument the writ proceeding is not moot. The Coastal Commission was not involved in *Sava Tara*. In that case, the Supreme Court held a city's approval of a final EIR for a project during the pendency of an appeal of the denial of the project opponent's CEQA petition challenging the city's pre-EIR approval of development agreements did not moot the appeal, because the opponent could "still be awarded the relief it [sought], an order that [the city] set aside its approvals." (*Id.* at p. 127.) *The Midlers, however, did not challenge the approval of either the CDP or the SDP in their CEQA petition.* And unlike the challenged project approvals that were issued before any CEQA review and were still in effect in *Save Tara*, the negative declaration the Midlers challenged was issued after CEQA review by the City and "ha[s] been superseded by the Coastal Commission's environmental review." (*McAllister, supra*, 147 Cal.App.4th at p. 294.) The Commission's review "nullif[ied] the [City's] decision" (*Fudge, supra*, 32 Cal.App.5th at p. 203) and "mooted any possibility [the Midlers] might be able to obtain relief against the City in civil court" (*id.* at p. 198).

13

underlying activity which may be subject to approval by one or more governmental agencies; it does not refer to each of the several approvals sequentially issued by different agencies." (*Committee for a Progressive Gilroy v. State Water Resources Control Bd.* (1987) 192 Cal.App.3d 847, 863 (*Committee for a Progressive Gilroy*); accord, *Guerrero v. City of Los Angeles* (2024) 98 Cal.App.5th 1087, 1102.) " 'This definition ensures that the action reviewed under CEQA is not the approval itself but the development or other activities that will result from the approval.' " (*Citizens for a Megaplex-Free Alameda v. City of Alameda* (2007) 149 Cal.App.4th 91, 106.)

In considering the Abbotts' CDP application, the Coastal Commission conducted a de novo review of the potential environmental impacts *of the home remodeling project as a whole* in an administrative appeal that "is 'the functional equivalent of the EIR process.' " (*McAllister, supra,* 147 Cal.App.4th at p. 296.) The staff report included the required findings of fact and reasons to support the conclusion the project as modified and conditionally approved was consistent with CEQA. (Cal. Code Regs., tit. 14, § 13096, subd. (a).) CEQA requires no further environmental review for the modified and conditionally approved project even though the project may require additional permits such as the SDP, unless substantial changes to the project beyond those already reviewed and approved by the Coastal Commission are proposed, substantial changes occur with respect to the circumstances under which the project is undertaken, or new information that neither was known nor could have been known at the time of the Commission's environmental review becomes available. (Pub. Resources Code, § 21166; *Committee for a Progressive Gilroy, supra*, 192 Cal.App.3d at p. 863.) The record discloses none of the circumstances that would require additional CEQA review. Once the Midlers obtained the environmental

14

review they sought by their writ proceeding, albeit from the Commission rather than from the City, the proceeding became moot. (*Schoshinski, supra*, 9 Cal.App.5th at p. 791.)

The Midlers are not entitled to proceed against the City under CEQA simply because it relied on the negative declaration to issue not only a CDP, which the Coastal Commission considered, but also an SDP, which the Commission did not consider. They argue "[t]here is good reason to maintain a separate review process at the City level" for the SDP, which concerns "generally applicable design constraints . . . that don't necessarily implicate coastal resources." The Midlers say the Coastal Commission "does not have the expertise to implement a review of each set of municipal codes or schemes of county ordinances relating to development more generally, even to the extent that such approvals may implicate CEQA issues." The sole case they rely on for this argument, *Save San Francisco Bay Assn. v. San Francisco Bay Conservation etc. Com.* (1992) 10 Cal.App.4th 908, is not on point. In that case, several groups challenged approval of the construction of an aquarium on the San Francisco Bay based on the approving governmental entities' alleged failures to comply *with CEQA and another statute*. In their writ proceeding, however, the Midlers alleged the City failed to comply *only with CEQA*; they did not allege noncompliance with any other law. In *Save San Francisco Bay Assn.*, the Court of Appeal noted that although the approving entities' analyses of project alternatives "might proceed along a similar track, the two statutory schemes differ in many significant respects." (*Id.* at p. 923.) "In this case, by contrast, the Coastal Commission did not undertake its environmental review pursuant to an entirely separate statutory scheme with a distinct focus." (*McAllister, supra*, 147 Cal.App.4th at p. 295.) Its environmental "review was the final step in a sequential

15

process of CEQA proceedings, which started with the [City's hearing officer]. That final step," not the City's prior and superseded step in issuing a negative declaration, "is the only one appropriate for judicial review." (*Id.* at p. 296.)

In sum, we conclude the Coastal Commission conducted the environmental review required by CEQA and prepared the functional equivalent of the EIR that the Midlers sought by their writ proceeding to compel the City to prepare. The superior court correctly granted the motion for judgment on the pleadings and dismissed the proceeding as moot. (See *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574 ["When events render a case moot, the court, whether trial or appellate, should generally dismiss it."]; accord, *Schoshinski, supra*, 9 Cal.App.5th at p. 791.)

Our conclusion on mootness does not require the City to "cede its authority over its SDP or as the lead agency under CEQA to the Coastal Commission," a concern the City first raised in a supplemental brief we ordered after counsel appeared at oral argument to announce the City's desire to withdrew from the joint brief it had filed with the Abbotts. The City apparently now reads the joint brief as taking the position that the City's consolidation of the Abbotts' CDP and SDP applications conferred jurisdiction on the Coastal Commission to consider both applications once the Commission assumed jurisdiction over the Midlers' appeal of the City's decision to issue the CDP. The City says that position "does not comport with its own interpretation of its own laws, its understanding of CEQA, or decades of City practice." Were we to publish an opinion adopting the joint brief's position, warns the City, "it would be a dramatic shift in legal precedent."

16

We reject these contentions as based on a misreading of the joint brief and on a concern not implicated by our decision on mootness.[5]

Nowhere in the joint brief is it contended that the City delegated to the Commission the City's role as lead agency for CEQA purposes. That brief says nothing about the City's role as lead agency. There is no dispute that under CEQA the City is the "lead agency" based on its primary responsibility for supervising and approving the Abbotts' home remodeling project (Pub. Resources Code, § 21067; Cal. Code Regs., tit. 14, § 15051, subd. (b)(1)), and the Coastal Commission is a "responsible agency" based on its issuance of the CDP (Pub. Resources Code, § 21069). (See *McAllister, supra*, 147 Cal.App.4th at p. 294 [county was "lead agency" and Coastal Commission was "responsible agency" for purposes of CEQA review of coastal development project].)

Nor is it contended in the joint brief that the City ceded it jurisdiction over the SDP to the Coastal Commission. The brief states the Commission's acceptance of the Midlers' appeal "terminated the City's jurisdiction *over the issuance of the CDP* for the project," and acceptance of the appeal required the Commission to consider "the entire project," not any particular permit application, for potential adverse impacts on the environment. (Italics added.) According to the joint brief, the issuance of multiple permits for the same project was "inconsequential under CEQA"; what mattered was that the Commission performed "a wholly separate environmental review" of the project, which mooted the Midlers' writ petition attacking the City's prior environmental review. The joint brief is correct under existing law. When

---

[5] We need not decide whether, as the Abbotts contend, the City is judicially estopped to raise the contentions on appeal because, say the Abbotts, they are inconsistent with the position the City took in the superior court. As we explain in the text, the contentions have no merit and do not affect our disposition of the appeal.

the Commission accepts an appeal of a local agency's decision on a CDP application, it must hold a de novo public hearing on the application (Pub. Resources Code, § 30621, subd. (a)), and the Commission's decision nullifies the local agency's CEQA decision (*Fudge, supra*, 32 Cal.App.5th at p. 203; *McAllister*, at p. 294; *Kaczorowski, supra*, 88 Cal.App.4th at p. 569). Thus, as the Abbotts state in their supplemental brief, the joint brief "does not argue for an expansion of the Coastal Commission's jurisdiction on appeal. Instead, the [joint] brief relies on decades of precedent holding that the Coastal Commission's CEQA-compliant review of a project on appeal moots a lawsuit, such as [the Midlers'], challenging the City's prior environmental review."

We reject the City's assertion that by following *Fudge*, *McAllister*, and *Kaczorowski* to conclude the Midlers' CEQA proceeding against the City is moot, we will "fundamentally change the City's relationship with the Coastal Commission" and grant the Commission "authority over the City's SDPs." The Commission took no action on the Abbotts' SDP application, which was never before it. It acted on only their CDP application. The Coastal Commission's performance of its own environmental review and determination that the home remodeling project, as modified and conditionally approved, complied with CEQA "nullif[ied]" and "superseded" the City's earlier decision in the negative declaration that the project would have no significant impact on the environment. (*Fudge, supra*, 32 Cal.App.5th at p. 203; *McAllister, supra*, 147 Cal.App.4th at p. 294.) The City's decision to issue the negative declaration is the *only* one the Midlers ever challenged in their CEQA writ petition. Although they alleged they would seek leave to amend to challenge the permit application decisions once the related administrative appeals became final, they never did so. The City's authority to issue the SDP is simply *not* at issue in this case. What *is*

18

at issue is the effect of the Coastal Commission's environmental review of the Abbotts' project on the Midlers' CEQA proceeding against the City. Because the Commission's "permit appeal procedure is treated as the functional equivalent of the EIR process" (*Kaczorowski, supra*, 88 Cal.App.4th at p. 569), the Commission effectively prepared the EIR the Midlers sought to compel the City to prepare and thereby mooted their CEQA case (*Fudge*, at pp. 198, 205).

To sum up and to leave no doubt about what we do and do not decide as to mootness, we state the following. Our mootness determination has nothing to do with the City's role as the lead agency under CEQA or its authority over the SDP. Although the City consolidated the Abbotts' SDP and CDP applications for consideration, the only application the Coastal Commission considered was the one for the CDP. In its review of that application, the Commission conducted its own environmental review of the Abbotts' home remodeling project and determined that, as modified and conditionally approved, the project was consistent with CEQA. That environmental review was functionally equivalent to preparation of an EIR and superseded the City's prior environmental review and decision to issue a negative declaration for the project. The decision to issue the negative declaration was the only one the Midlers attacked in the CEQA writ proceeding by which they sought to compel the City to prepare an EIR for the Abbotts' project. The Coastal Commission's preparation of the functional equivalent of an EIR during the pendency of the writ proceeding rendered the proceeding moot. On that ground, the superior court correctly granted the motion for judgment on the pleadings. It never considered the validity of the issuance of the SDP, and neither do we.

C.     *Leave to Amend*

The Midlers challenge the superior court's denial of leave to amend the CEQA writ petition.  They contend "it was always contemplated" that their petition "would be amended to include the further administrative appeals relevant to the challenge to the [Abbotts' remodeling] [p]roject."  The Midlers complain the superior court abused its discretion by not permitting them to add allegations of agency actions that occurred after they filed the writ petition, which allegations, they say, would relate back to the initial filing date and state a valid CEQA claim.  We are not persuaded.

A court abuses its discretion by denying leave to amend after granting a motion for judgment on the pleadings when there is a reasonable possibility the defect can be cured by amendment.  (Code Civ. Proc., § 438, subd. (h); *Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 670.)  The plaintiff bears the burden to show such possibility by explaining how the pleading can be amended and how the amendment will change its legal effect. (*Adams*, at p. 671; *McAllister, supra*, 147 Cal.App.4th at p. 298.)  As we shall explain, the Midlers have not sustained that burden.

The Midlers cannot state a CEQA claim against the City.  As we explained in part II.B., *ante*, the City's CEQA determination was superseded by the Coastal Commission's acceptance of their appeal of the City's decision on the Abbotts' CDP application and the Commission's subsequent de novo determination the Abbotts' remodeling project, as modified and conditionally approved, was consistent with CEQA.  "Project opponents who feel aggrieved by the Commission's decision still have the right to file for writs of mandate to vacate *that* decision." (*Fudge, supra*, 32 Cal.App.5th at p. 205, fn. 12.)  If the Midlers wanted to attack the CEQA determination, "[t]he proper defendant [was] the Coastal Commission," not the City.  (*McAllister, supra*,

20

147 Cal.App.4th at p. 298; see *Fudge*, at pp. 199, 205 [when Commission accepts appeal of local agency's decision on compliance of CDP with CEQA, only Commission's decision may be attacked in court by petition for writ of mandate].)  But it is now too late for the Midlers to sue the Commission.  A writ petition challenging the Commission's decision had to be filed within 60 days after it became final.  (Pub. Resources Code, § 30801.)  The Commission made its decision to approve the Abbotts' CDP on October 12, 2022, more than two years ago.  Hence, "due to the passage of time, it cannot now be joined as a party-defendant on [the Midlers'] CEQA claim."  (*McAllister*, at p. 298.)

The Midlers may not, as they suggest, avoid the bar of the statute of limitations by amending their writ petition to substitute the Coastal Commission as a Doe defendant.  An amendment that adds a new defendant against which no claim was stated in the original pleading and asserts a different factual basis for liability does not relate back to the filing date of the original pleading.  (*Barrington v. A. H. Robins Co.* (1985) 39 Cal.3d 146, 154; *Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 601–602; *Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176.)  The Commission cannot simply be substituted for one of the Doe defendants allegedly "responsible for the causes of action set forth [in the writ petition]," because it was nowise responsible for the City's decision under CEQA to adopt a negative declaration for the Abbotts' remodeling project, which, again, was the *only* decision challenged by the petition.  The Commission did not get involved in the project until nearly three months later, when the Midlers appealed the City's decision on the Abbotts' CDP application.  The Commission then conducted a de novo review of the project's potential environmental impacts and determined that as modified and conditionally approved it was consistent

21

with CEQA. Any CEQA claim against the Commission would have to be based on facts and events that occurred after the Midlers filed the original petition. Amendment after expiration of the limitations period will not be allowed when the result would be to add a cause of action based on different operative facts against a party neither previously named nor fictitiously designated. (*Barrington*, at p. 154; *Ingram v. Superior Court* (1979) 98 Cal.App.3d 483, 492.)

Nor may the Midlers avoid the limitations bar, as they suggest, by adding allegations of "agency actions following the filing of the [original] [p]etition" in an amended petition "which *exclusively raises claims as to the actions of the City under CEQA*." Because the Coastal Commission, not the City, made the final CEQA determination on the Abbotts' remodeling project, any judgment against the City on a CEQA claim "would not bind the Commission and would be vulnerable to collateral attack by the Commission. [Citations.] A judgment in the absence of the Commission would not be 'a complete determination of the controversy.' [Citation.] A judgment without the Commission would be neither 'effective' [citation] nor 'adequate' [citation]." (*Kaczorowski, supra*, 88 Cal.App.4th at p. 570.) An amended petition that alleged only CEQA claims against the City therefore would be subject to dismissal for failure to join an indispensable party. (Code Civ. Proc., § 389; *Kaczorowski*, at pp. 570–571.) "The absence of an indispensable party which could not be joined [due to the limitations bar] was dispositive of [the Midlers'] petition." (*Kaczorowski*, at p. 571.)

In sum, the Midlers have not shown they can amend their writ petition to state a valid claim under CEQA, which is the only claim they have ever sought to pursue. The superior court did not abuse its discretion in denying

22

leave to amend.  (*McAllister, supra*, 147 Cal.App.4th at p. 298; *Kaczorowski, supra*, 88 Cal.App.4th at p. 470.)

### III.

### DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.